IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| ROBERT A. GLASSER | ) | |
| and LESLIE J. GLASSER, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 130188N |
| | ) | |
| v. | ) | |
| | ) | |
| DOUGLAS COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION** |

The court entered its Decision in the above-entitled matter on November 14, 2013. The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision was entered. The court's Final Decision incorporates its Decision without change.

Plaintiffs appeal the real market value of property identified as Account R69106 (subject property) for the 2012-13 tax year. A trial was held in the Oregon Tax Courtroom on September 19, 2013. Plaintiff Robert A. Glasser (Glasser) appeared and testified on behalf of Plaintiffs. Plaintiff Leslie J. Glasser also appeared at trial. Paul E. Meyer, Douglas County Counsel, appeared on behalf of Defendant. Ken Vedder (Vedder), Registered Property Appraiser II, testified on behalf of Defendant. Plaintiffs' Exhibits 1 through 9 and Defendant's Exhibit A were received without objection.

I. STATEMENT OF FACTS

The subject property is located "approximately 15 miles northeast of Roseburg" on the "scenic North Umpqua River." (Def's Ex A at 2, 4.) Glasser testified that the subject property is located on the river and has a river view, but lacks river "access." The subject property is a 3,438 square foot, one-level home built in 2005 and 2006 and situated on a 1.27 acre lot. (*Id.* at

2, 15.)  The subject property also includes a 936 square foot finished attached garage, a 1,581 square foot "finished detached garage with heated office and bath[,]" and "a large covered deck on the back of the house" with a river view.  (*Id.* at 2.)

Glasser testified that the subject property includes three fireplaces, which are essential for cold weather because the subject property's electric heater is insufficient to heat the house.  He testified that the subject property includes "builders-grade hardware, fixtures, and appliances."  Glasser testified that the appliances are not "high quality."  He testified that the subject property's carpet was "conservatively priced."  Glasser testified that the subject property lacks window coverings and requires maintenance, including re-painting and re-caulking.

Vedder testified that, prior to the 2012-13 tax year, the subject property had been listed as a "class 6" house in Defendant's records.  He testified that, after he inspected the subject property in preparation for the board of property tax appeals (board) hearing, he determined that the subject property is a "class 5+" house, and therefore recommended a reduction in the 2012-13 tax and assessment roll real market value from $733,498 to $636,129.  (*See id.* at 1, 15.)

Glasser testified that the subject property land was purchased in September 2004 for $120,000.  (*See also* Def's Ex A at 5.)  Glasser testified that he served as general contractor for the construction of the subject property improvements in 2005 and 2006 and subcontracted most of the work.  (*See generally* Ptfs' Ex 5; Def's Ex A at 2.)  He provided profit and loss statements from January 2004 through December 2005 and January through April 2006.  (Ptfs' Ex 5.)  Those statements show total expenses of $230,260.02 and $55,605.67, respectively.  (*Id.* at 2, 8.)  Glasser testified that the statements do not include an expense for his time as general contractor or for overhead and profit.  He testified that the costs incurred in 2005 and 2006 would not

/ / /

necessarily be the same costs as of January 1, 2012, and estimated that construction costs generally increased by about 10 percent over that time period.

Glasser testified that he researched comparable sales and identified three properties that sold in 2012. (Ptfs' Exs 7 at 1, 8 at 1-6.) The three sales identified by Glasser were a 1,648 square foot, single-family house built in 1972 that sold for $320,000 in July 2012; a 2,040 square foot,[1] single-family house built in 1994 that sold for $331,000 in October 2012; and a 1,806 square foot, single-family house built in 1989 that sold for $315,000 in December 2012. (Ptfs' Ex 8 at 1-6.) He did not make adjustments to any of those sales. Glasser also identified two properties listed for sale and provided numerous printouts from the website of the real estate information service Zillow, http://www.zillow.com ("Zillow"), identifying estimated values for properties that Glasser considered comparable to the subject property. (Ptfs' Exs 7 at 1, 8 at 7-10, 9.) He testified that the properties from Zillow were not listed and had not recently sold. For each of his sales, listings, and properties on Zillow, Glasser reviewed Defendant's property tax records and identified the price per square foot based on the tax roll improvement real market value. (*See generally* Ptfs' Exs 8-9.) Glasser testified that the average value of improvements was $83 per square foot.

Vedder testified that he appraised the subject property as of January 1, 2012, and concluded that its real market value was $636,129. (Def's Ex A at 1-2.) He testified that he considered all three approaches to value, but concluded that only the sales comparison approach was appropriate as of January 1, 2012. (*Id.* at 5.) Vedder identified six sales of property located along the North Umpqua River, but considered his sale 1 to be "the most comparable sale to the subject [property] in size, location, quality of construction, amenities and * * * age * * *." (*Id.* at

---

[1] The property tax record for Glasser's sale 2 identified the size as 1,585 square feet. (Ptfs' Ex 8 at 4.)

6, 12.) Vedder's sale 1 is a 3,285 square foot house built in 2002 that sold for $600,000 on June 8, 2012. (*Id.* at 15.) Vedder testified that sale 1 was a "divorce sale" originally listed for $745,000 that "went pending within 6 weeks of being on the market." (*Id.* at 13.) He testified that, in his opinion, sale 1 would likely have sold for about $725,000 if it had not been a "divorce sale." Vedder determined an adjusted sale price of $648,247 for his sale 1. (*Id.* at 15.)

Glasser testified that Vedder's sale 1 is located closer to town than the subject property and that properties located closer to town are more desirable than those located farther away, such as the subject property. Glasser testified that Vedder's sale 1 includes a paved driveway, unlike the subject property. He testified that the builder who constructed Vedder's sale 1 added amenities superior to those of the subject property.

Vedder's sale 2 is a 2,930 square foot home built in 2003 that sold for $520,000 on August 12, 2011. (Def's Ex A at 15.) He testified that sale 2 is bit older and smaller than the subject property, but is of a similar class and quality as the subject property. (*See id.* at 6, 15.) Vedder testified that the location of sale 2 is inferior to that of the subject property because it lacks a view of the river. (*Id.* at 6.) He testified that sale 2 included a swimming pool, "which can be an asset or a detriment to the property." (*Id.*) Vedder testified that he treated the swimming pool as an asset and made a downward adjustment of $70,255 for the swimming pool. (*See id.* at 15.) He concluded an adjusted value of $562,977 for sale 2. (*Id.*)

Vedder testified that his remaining four sales were not very comparable to the subject property, noting that they required net adjustments ranging from 46 to 92 percent. (Def's Ex A at 15-16.) Sales 3 through 6 are all smaller and older than the subject property.[2] (*Id.*)

---

[2] Vedder's sales 3 through 6 range in size from 1,362 to 2,256 square feet and range in effective year built from 1972 to 1990. (Def's Ex A at 15-16.) Vedder's sale 5, located at 548 Echo Drive, was also used by Glasser as his sale 1. (Def's Ex A at 16; Ptfs' Ex 7 at 1.) The actual sale price was $320,000, but Vedder determined an adjusted sale price of $619,153 for sale 5. (Def's Ex A at 16.)

Vedder testified that he included sales 3 through 6 primarily to establish land values along the river.

Vedder also identified four sales of bare land on the North Umpqua River: a sale of 5.00 acres for $245,000 in September 2008; a sale of 1.44 acres for $210,000 in April 2011; a sale of three lots totaling 4.09 acres for $435,000 in October 2011;[3] and a sale of 2.68 acres for $340,000 in May 2013. (Def's Ex A at 22.) Vedder testified that the 2.68 acre parcel that sold in May 2013 had river access and a river view. He testified that he did not make an adjustment for river access, only for a river view, because he was unsure if river access increased a property's value above the value of a river view. Vedder testified that he included land sales in his report to demonstrate that land on the North Umpqua River was holding its value as of January 1, 2012.

Plaintiffs request a 2012-13 real market value of $465,000 for the subject property. (Ptfs' Compl at 1.) Defendant requests that the 2012-13 real market value determined by the board, $636,129, be sustained. The 2012-13 maximum assessed value was $574,011. (*Id.* at 2.)

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2012-13 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003). Real market value is defined in ORS 308.205(1), which states:[4]

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an

---

[3] Vedder's report states the lot size as 2.04 acres. (Def's Ex A at 22.) Vedder testified that the sale included multiple lots totaling 4.09 acres. (*See id.* at 50-54.) He testified that only one of the lots is located on the river. (*See id.* at 52-54.)

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2012-13 tax year was January 1, 2012. ORS 308.007; ORS 308.210.

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). The three approaches to value that must be considered are: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. OAR 150-308.205-(A)(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id.* Here, Glasser presented cost evidence as well as evidence of sales that he considered comparable to the subject property. Vedder relied only on the sales comparison approach.

As the parties seeking affirmative relief, Plaintiffs have the burden of proof and must establish their case by a preponderance of the evidence. *See* ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.,* 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002)). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

A.   *Cost approach*

"In the cost approach, the value of a property is derived by adding the estimated value of the land to the current cost of constructing a reproduction or replacement for the improvements

and then subtracting the amount of depreciation * * * in the structure from all causes." *Magno v. Dept. of Rev.* (*Magno*), 19 OTR 51, 55 (2006) (quoting Appraisal Institute, *The Appraisal of Real Estate* 63 (12th ed 2001)). The cost approach is "particularly useful in valuing new or nearly new improvements," but is "less useful where the evidence of cost is incomplete, distorted, or otherwise unreliable." *Id.*

The board reduced the subject property's 2012-13 land real market value to $213,960. (Ptfs' Compl at 2.) Vedder provided bare land sales supporting the subject property's land value and Glasser stated during his closing argument that he "more or less" agreed with the subject property's 2012-13 land value. In support of the real market value of the subject property's improvements, Glasser provided profit and loss statements from the construction of the subject property in 2005 and 2006 totaling $286,000 (rounded). Glasser acknowledged that the actual costs that he reported for construction of the subject property are low because they do not include the general contractor's cost, profit, or overhead and because construction costs increased between 2005 and 2012. He estimated that construction costs had increased by 10 percent between 2005 and 2012, but did not provide any evidence to corroborate that estimate. During his closing argument, Glasser estimated a cost of $320,000 to construct the subject property's improvements as of January 1, 2012.

The court finds that the construction cost evidence presented by Glasser in this case is unreliable. The cost evidence is incomplete because it does not include the general contractor's cost, profit, or overhead. Furthermore, the costs were incurred in 2005 and 2006. Under the cost approach, "the *current cost* of constructing a reproduction or replacement for the improvements" must be determined and depreciation subtracted. *Magno*, 19 OTR at 55 (emphasis added). The

/ / /

2005 and 2006 costs provided by Glasser were not "current" as of January 1, 2012, and the parties agreed that construction costs increased between 2005 and 2012.

Glasser also argued that the subject property's 2005 and 2006 construction costs are relevant to this appeal insofar as those costs can be used to determine the subject property's correct real market value for the 2006-07 tax year and then time trended downward. He testified that, in his view, the subject property's 2006-07 real market value and maximum assessed value were in error. Glasser testified that the subject property's correct real market value for the 2006-07 tax year should be determined based on actual construction costs and that value should then be reduced by 32 percent[5] to determine the subject property's correct real market value for the 2012-13 tax year.

As Glasser acknowledged, the 2006-07 tax year is beyond the court's jurisdiction. The court is not aware of any authority supporting Glasser's proposed method of finding the 2006-07 real market value and trending it to the 2012-13 tax year. Glasser's cost evidence is given no weight in this analysis. Defendant did not present any evidence under the cost approach.

B.      *Sales comparison approach*

The sales comparison approach "may be used to value improved properties, vacant land, or land being considered as though vacant." *Chambers Management v. Lane County Assessor,* TC-MD No 060354D, WL 1068455 at *3 (Apr 3, 2007) (internal quotation marks omitted). The "court looks for arm's length sale transactions of property similar in size, quality, age and location" to the subject property. *Richardson,* 2003 WL 21263620 at *3.

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable,

---

[5] Glasser testified that, based on the changes to the subject property's tax roll real market value between the 2006-07 and 2012-13 tax years, Defendant's time trend was downward by 32 percent.

> will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions. * * *."

OAR 150-308.205-(A)(2)(c).

Glasser identified three comparable sales but failed to make any adjustments to those sales for differences from the subject property as required by OAR 150-308.205-(A)(2)(c). Glasser's failure to make any adjustments to his sales is particularly problematic in this case because his sales were significantly smaller and older than the subject property. For instance, Glasser's sale 1 is less than half the size of the subject property and more than 30 years older than the subject property. Glasser's comparable sales evidence does not comply with the administrative rule and is given no weight in this analysis.

Glasser also provided property tax records and printouts from Zillow for properties that he considered comparable to the subject property. Whether or not those properties are comparable to the subject property, they are not "actual market transactions." OAR 150-308.205-(A)(2)(c). The court cannot rely on estimates of value from Zillow or the assessed values from property tax records. Plaintiffs have failed to prove by a preponderance of the evidence that the subject property's 2012-13 real market value was $465,000.

Even though the burden has not shifted under ORS 305.427, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. Vedder used the sales comparison approach and made adjustments to his sales for differences from the subject property. Vedder's first two sales are most comparable to the subject property and support the 2012-13 real market value of $636,129 determined by the board. The court finds that no change to the subject property's 2012-13 real market value is supported in this case.

/ / /

III.  CONCLUSION

After careful consideration, the court concludes that Plaintiffs failed to meet their burden of proof.  The evidence presented by Defendant supports the subject property's real market value determined by the board for the 2012-13 tax year.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this \_\_\_ day of December 2013.


ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*THIS DOCUMENT WAS SIGNED BY MAGISTRATE ALLISON R. BOOMER ON DECEMBER 3, 2013, AND FILED, ENTERED AND MAILED THE SAME DAY.  THIS IS A PUBLISHED DOCUMENT.*